UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VINCENT VERDI,

                      Plaintiff,

  v.                                            9:25-CV-1727
                                                        (AJB/PJE)

L. BRENNAN et al.,

                      Defendants.
_____

APPEARANCES:

VINCENT VERDI
Plaintiff, pro se
19-A-2467
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589


ANTHONY J. BRINDISI
United States District Judge

## DECISION and ORDER

**I.    INTRODUCTION**

      The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff Vincent Verdi asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with a motion for summary judgment. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("Summary Judgment Motion"). Plaintiff, who is incarcerated at Shawangunk Correctional Facility, paid $402.000 of

1

the $405.00 filing fee.

## II.     SUFFICIENCY OF THE COMPLAINT

### A.     Governing Legal Standard

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

    **B.**    **Summary of the Complaint**

The complaint asserts allegations of wrongdoing that occurred while plaintiff was incarcerated at Shawangunk Correctional Facility, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  *See generally* Compl.

The following facts are set forth as alleged by plaintiff in his complaint, or indicated in documents attached thereto.[1]

In 2021, plaintiff was "the Legal Editor for the prison newspaper, 'The Gunk[,]' . . . and during that time [he] submitted many essays to defendant Marcus[,]" the Head of the Facility Media Review Committee, "for review and approval for publication[.]"  Compl. at 2.  Defendant Marcus "approved every essay plaintiff submitted for publication."  *Id*.

In the Spring of 2022, defendant Marcus and "the administration started to dictate to the newspapers' Editor-in-Chief . . . what articles would, and would not, be acceptable for publication."  Compl. at 2.  "The dispute resulted in the editor resigning from his position."  *Id*.

On May 1, 2025, defendant Marcus "posted a flyer in every prison block soliciting essays, poetry, short stories and original art for publication in the newspaper."  Compl. at 3.  On or about May 7, 2025, plaintiff "submitted an essay" to defendant Marcus entitled, "Ineffective Assistance of Counsel and Knowing the Elements of Its Application."  *Id*.

On May 15, 2025, plaintiff received "a memo from defendant Marcus stating, 'we will not be publishing your article on Ineffective Assistance of Counsel,'" without any explanation for the decision.  Compl. at 3.  That same day, plaintiff wrote to defendant Marcus "asking why [his] article[ ] was rejected" wherein he also noted "the article met Department of

---

[1] Plaintiff has attached several pages of exhibits to his complaint, which the Court has also considered as part of its sufficiency review herein.  *See* Compl. at 9-32.

Corrections journalistic protocols and media review standards" and "stressed the article would be of great interest to the prison population[.]" *Id*.

On or about May 26, 2025, plaintiff "submitted two more essays to defendant Marcus for consideration." Compl. at 3. The first essay was titled "Due Process Rights for Illegal Immigrants" and "addressed the contemporary discourse taking place[.]" *Id*. The second essay was titled "The Historical Context of Due Process of Law" and "addressed the history of American due process protections before it was ratified in 1868." *Id*.

Defendant Marcus "rejected both of plaintiff's essays and provided [him] no explanation as to why." Compl. at 4.

On June 10, 2025, plaintiff wrote defendant Marcus "asking why all [his] essays were approved . . . when Collado was Superintendent in 2021." Compl. at 4. On July 21, 2025, plaintiff "received a memo from defendant [Marcus]" denying his request to "meet and discuss" his contributions to the prison newspaper. *Id*. at 5. Plaintiff "also received an investigative report statement from defendant [Deputy Superintendent of Programs] Brennan" stating that there was "no need to meet and discuss plaintiff's concerns because the Media Review Editorial Team found issues with each of the articles submitted." *Id*.

Liberally construed, the complaint asserts First Amendment free speech claims and Fourteenth Amendment due process claims against the named defendants.

Plaintiff seeks injunctive and monetary relief. Compl. at 7-8. For a more complete statement of plaintiff's claims, reference is made to the complaint.

### C. Analysis

"Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

#### 1. Free Speech Claims

The First Amendment to the United States Constitution guarantees the right to free speech and a free press, among other things. *See* U.S. Const. amend. I; *Griswold v.*

6

*Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes ... the right to distribute, the right to receive, [and] the right to read ...."). "[W]hile inmates clearly retain protections afforded by the First Amendment, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere[.]" *Burns v. Martuscello*, 890 F.3d 77, 86 (2d Cir. 2018) (quotation marks and citations omitted)).  Indeed, it is well-settled that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Lab. Union*, 433 U.S. 119, 125 (1977).

However, "[i]n cases raising First Amendment concerns, the courts must be particularly vigilant about content-based censorship." *Farid v. Goord*, 200 F. Supp. 2d 220, 239-40 (W.D.N.Y. 2002).  In *Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985), *rev'd on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 n.2 (1987), the Second Circuit "described the court's role as balancing deference to the expertise of prison guards and administrators in making decisions about the potential for unrest as they enforce regulations, with their duty to insure that the 'precious constitutional rights' of inmates are not being abridged." *Farid*, 200 F. Supp. 2d at 239-40 (quoting *Abdul Wali*, 754 F.2d at 1018); *Turner v. Safely*, 482 U.S. 78, 89 (1987) (explaining that a prison's restriction limiting First Amendment rights must be "reasonably related to legitimate penological interests").

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed*

*Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's First Amendment claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2.  Due Process Claims

To successfully state a due process claim under Section 1983, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  See *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from the deprivation; and that (2) the deprivation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658; *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

In this case, the complaint alleges that the named defendants failed to adhere to "the mandatory guidelines" set forth in DOCCS Directive Nos. 4521 and 4572, which "must [be]

follow[ed] when evaluating all literary works" for publication.  *See* Compl. at 4.  The Court has serious doubts as to whether these Directives create a cognizable liberty interest that would trigger due process protection, both because the Directives do not appear to include mandatory language regarding content publication, and because failing to allow plaintiff to publish content he has authored does not appear to result in an atypical and significant hardship upon him in relation to the ordinary incidents of prison life.  *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (holding that a state regulation does not create a protected liberty interest unless it places "substantive limitations on official discretion"); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989) (same); *Jackson v. Boucaud*, No. 9:08-CV-1373 (TJM/DEP), 2009 WL 6066799, at *7-10 (N.D.N.Y. Dec. 31, 2009) ("Directive No. 4572 simply does not create a cognizable liberty interest."), *report and recommendation adopted by* 2010 WL 933744 (N.D.N.Y. Mar. 15, 2010).

Nonetheless, out of an abundance of solicitude, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's due process claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### III. SUMMARY JUDGMENT MOTION

Insofar as plaintiff seeks summary judgment on his claims, Rule 56(a) of the Federal Rules of Civil Procedure allows a court to grant summary judgment "if the movant shows that

9

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). If the moving party meets its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In addition, as a general matter, "[t]he nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (citation and internal quotation marks omitted); *Hellstrom v. U.S. Dep't of Veteran Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgement be granted against a [party] who has not been afforded the opportunity to conduct discovery."); *see also United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118,

139 n.21 (S.D.N.Y. 2015) (noting that "courts disfavor summary judgment motions made prior to the completion of discovery").

Here, plaintiff as not presented any compelling argument for "why this is one of the 'rarest of cases' where summary judgement may be granted against a [party] who has not been afforded the opportunity to conduct discovery." *King v. Wenderlich*, No. 14-CV-6491, 2016 WL 4678998, at *2 (W.D.N.Y. Sept. 7, 2016) (quoting *Hellstrom*, 201 F.3d at 97). Accordingly, plaintiff's motion for summary judgement is denied as premature. *See Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 8 (N.D.N.Y. 2000) (collecting Second Circuit cases denying summary judgment motions as premature where there was not "a fully adequate opportunity for discovery at the time the moving party sought summary judgment" (internal citation omitted)).

## IV.    FILING FEE AND SERVICE

A civil action is commenced in federal district court "by filing a complaint." Fed. R. Civ. P. 3. The filing fees must be paid at the time an action is commenced, unless an application to proceed in forma pauperis ("IFP") is submitted to the Court. *See* 28 U.S.C. §§ 1914(a), 1915(a).[2] The federal statute governing applications to proceed IFP in federal court, the

---

[2] The total cost for filing a civil action in this court is $405.00 (consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $55.00). A party granted in forma pauperis status is not required to pay the $55.00 administrative fee; however, a prisoner granted in forma pauperis status is required to pay, over time, the full amount of the $350.00 filing fee, regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3). The amount of the payments fluctuates over time depending upon the balance in the inmate's prison account. *See* 28 U.S.C. § 1915(b).

Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, provides in pertinent part that an IFP application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In accordance with Local Rule 5.1.4 of the Local Rules of Practice for the Northern District of New York ("N.D.N.Y.L.R."), a prisoner seeking in forma pauperis status in a civil action subject to the PLRA may satisfy this requirement by submitting a completed, signed, and certified IFP application. N.D.N.Y.L.R. 5.1.4(b)(1)(A).[3]

Where a plaintiff has been authorized by the Court to proceed IFP pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of process of the summons and operative pleading on his behalf. *See* Fed. R. Civ. P. 4(c)(2) (U.S. Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases."). However, in this case, plaintiff has not requested to proceed IFP, and he is therefore responsible for serving the summons and complaint on the surviving defendants.

---

[3] A "certified" IFP application is one on which the certificate portion at the bottom of page two of the form IFP application has been completed and signed by an appropriate official at the plaintiff's facility. The certificate portion of the IFP application requests information regarding funds and/or securities held on account to the inmate's credit over the preceding six months.

Rule 4(c) of the Federal Rules of Civil Procedure provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3).[4]

In light of the foregoing, and in order to advance the disposition of this action, plaintiff is advised that he must provide the Court with two copies of the complaint for service and do one of the following within thirty (30) days: (1) pay the service fee due to the U.S. Marshal in full by money order or certified check along with the outstanding filing fee balance of $3.00;[5] or (2) return a properly completed application to proceed IFP and inmate authorization form. Plaintiff is directed to send the service documents and any payment of fees to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## V. CONCLUSION

**WHEREFORE**, it is hereby

---

[4] Before service is attempted by the U.S. Marshal, an incarcerated plaintiff must pre-pay the full service fee due by money order or certified check, and submit a copy of the complaint for each defendant. The service documents and payment of the service fee may be sent to the Clerk of Court for the Northern District of New York, to be forwarded to the U.S. Marshal.

[5] Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the surviving defendants in this action is therefore $16.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

**ORDERED** that the following claims **SURVIVE** sua sponte review: (1) plaintiff's First Amendment free speech claims against defendants Brennan and Marcus; and (2) plaintiff's Fourteenth Amendment due process claims against defendants Brennan and Marcus; and it is further

**ORDERED** that if plaintiff wishes to proceed with his claims in this action, he must provide the Court with two copies of his complaint for service on the defendants and do one the following within thirty (30) days: (1) pay the service fee due to the U.S. Marshal in full by money order or certified check along with the remaining $3.00 balance on the required filing fee; or (2) return a properly completed IFP application and inmate authorization form.  Upon the expiration of this deadline or receipt of either the required payment or IFP materials, whichever happens first, the Clerk shall return this matter to the Court for further review; and it is further

**ORDERED** that the Summary Judgement Motion (Dkt. No. 2) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall forward a copy of the summons and complaint by electronic mail to the New York State Attorney General's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must

comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **<u>Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action</u>**; and it is further

    **ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff, along with a blank IFP application and inmate authorization form.

Dated: February 12, 2026
       Utica, New York.

*Anthony Brindisi*
Anthony J. Brindisi
U.S. District Judge